# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  Criminal Action No.: 5:17-CR-15

CORY LETROIT JOSEPH RIGGS,

    Defendant.

## REPORT AND RECOMMENDATION

**I.    INTRODUCTION**

The Defendant is a convicted felon and therefore prohibited from possessing a firearm. On June 6, 2017, the Grand Jury indicted him for one count of unlawful possession of a firearm as well as a forfeiture allegation.

The Defendant filed a motion to suppress evidence. The Court held a hearing regarding these motions on September 5, 2017. The Defendant appeared in person and by his counsel Robert McCoid, Esq. The Government appeared through its counsel Stephen L. Vogrin, Esq.

For the below listed reasons, The Court is not persuaded by Defendant's motion and recommends that it be denied.

**II.    FINDINGS OF FACT**

On April 4, 2017, police got a call about a shoplifting incident in which a young woman had stolen a bottle of liquor from a gas station. Police made contact with a woman sitting across the street from the gas station drinking liquor from a bottle. The woman originally claimed to be twenty-one years of age, but police discovered soon after that she was actually twenty. After initially denying having stolen the bottle, the woman admitted to having stolen the liquor and was arrested.

After being arrested, the woman told officers about an incident in which she alleged she had been strangled in a local hotel room by a man she called "Cory," who she described as being 6'5" with dreadlocks. She stated that she had been staying in a hotel room with Cory since April 1, 2017, and that they had been involved in a sexual relationship.

The woman claimed that the Defendant got back to the hotel room after being at work, and was angry with her for having another man in the room while he was gone, which she admitted to police was true. She said she was lying in bed, when the Defendant grabbed her from the bed, choked her, and put a gun in her face. The woman says the Defendant then demanded she leave. She described the gun as being a black handgun, and the type you have to "pull back" to load.

The detective observed that the woman had scratches on her neck and chest. The detective also observed that the woman's hand was swollen, but the woman claimed that the swollen hand was from an unrelated incident.

The police then went to the hotel to make contact with the Defendant. Upon arrival, the hotel manager asked if they were there about the incident involving a young woman and a man named Cory who was staying at the hotel. The officer confirmed they were, and the hotel manager stated that the Defendant was staying in room 401.

The Defendant confirmed the relationship, and admitted that he had been upset after being told by the hotel manager that the woman had brought a man to the room when he was at work. Defendant also claimed to have found used condoms or condom wrappers in the bed.

Defendant denied a physical altercation or pointing a gun at the woman. Defendant claimed that he confronted her about having another man in the room and asked her to leave, but that it never escalated to physical violence. Defendant stated that the woman had injured her

hand by repeatedly striking the window in anger after he asked her to leave.  Defendant claimed upon him demanding she leave, she demanded he give her money.  Defendant stated that he gave her ten dollars, and she left.

Police asked the Defendant if he would consent to a search of his hotel room, but the Defendant refused.  Defendant was then taken into custody for the alleged physical altercation.

After talking with the woman and making an investigation Detective Brandi Alderman drafted an affidavit and applied for a search warrant of the Defendant's hotel room.  The affidavit did not mention any of the discrepancies between the woman's version of events and the Defendant's, and did not refer to Defendant's statement to police at all.  The affidavit also did not mention the woman's arrest or her lying to police about her age, although the detective told the magistrate that the woman had been arrested for shoplifting and had initially lied about her age.

## III.     DISCUSSION

### A.     Defendant's Motion to Suppress Evidence

The Defendant argues that he is entitled to a hearing under the framework laid out in *Franks v. Delaware*, 438 U.S. 154, 156-56 (1978).

For a defendant to be entitled to a *Franks* hearing, he must make a "dual showing . . . which incorporates both a subjective and an objective threshold component. *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990).  Generally, *Franks* applies to false statements included in affidavits for warrants.  However, in *Colkley*, the Fourth Circuit held *Franks* could also apply to omissions.

To meet the test set forth in *Colkley*, a defendant must demonstrate that (1) the omission is the product of a deliberate falsehood or of a reckless disregard for the truth, and (2) inclusion

3

of the omitted information in the affidavit would defeat probable cause. *Id.* The *Colkley* Court noted that an affiant need not include all potentially exculpatory evidence in the affidavit, and "the affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter that might be construed as exculpatory." *Id.* at 301.

Here, the Defendant argues that he is entitled to a *Franks* hearing because the affidavit submitted by Detective Alderman when applying for a search warrant contains "profound, material omissions bearing directly on the credibility and veracity upon whose information the state court magistrate relied in finding probable cause and in issuing the subject search warrant." ECF No. 17 at 4. The Court disagrees.

Although the Court finds that the affidavit does not mention any interaction with the Defendant or his version of events, the Court finds that the information omitted from the affidavit is not the product of a deliberate falsehood or of a reckless disregard for the truth. No evidence was presented to the contrary. Indeed, Detective Alderman testified that during her meeting with the magistrate, she *volunteered* to the magistrate that officers had originally encountered the woman when she was suspected of, and subsequently admitted to, shoplifting from a gas station. She further testified that she told the magistrate the woman had also initially lied to police about her age. If Detective Alderman intentionally withheld information from her affidavit in order to increase her chances of securing a search warrant, it does not stand to reason that she would volunteer such information to the magistrate during their meeting. Therefore, under the totality of the circumstances, the Court finds that the Defendant failed to meet his burden of showing the omission of information to be intentional or with a reckless disregard for the truth.

Although the Court's inquiry could end because Defendant has failed to meet his burden on the first prong of the test under *Colkley*, it will nonetheless consider the second prong. Contrary to Defendant's argument, including the statements by the Defendant in the affidavit would not destroy a probable cause finding. Probable cause to search has been described by the Supreme Court as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Even including Defendant's conflicting account of events and going into more detail about what the Defendant deems holes in the woman's statement, the Court finds that the affidavit would still support a finding of probable cause.

**B.     Defendant's Motion to Suppress Statements**

The Defendant argues that "statement obtained from Mr. Riggs on a post-search basis are presumptively inadmissible . . . due to the deficiencies in the subject search warrant." ECF No. 17 at 8. While this is an accurate statement of law, the Courts holding in Part A. *supra* makes the argument moot.

Therefore, because Defendant has failed to meet his burden under *Colkley*, he is not entitled to a *Franks* hearing, and, accordingly, his Motion to Suppress Evidence is **DENIED.**

**IV.     RECOMMENDATION**

The Court **RECOMMENDS** that the Defendant's [ECF No. 17] Motion to Suppress Evidence and Statements be **DENIED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.

A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: September 7, 2017          /s/ *James E. Seibert*
                                   JAMES E. SEIBERT
                                   U.S. MAGISTRATE JUDGE